Rice v. Culver.

---

WILLIAM E. RICE and others

v.

ALMENA M. CULVER, administratrix &c., and others.

A written agreement recited that the defendants had agreed to purchase certain land, with a view to improving and selling it, and that they proposed to sell to complainants certain undivided portions, for the purpose of forming an association to develop the property, at the price of $1,500 per acre, for seventy-three and six hundred and fifty-two one-thousandths acres.—*Held*, that complainants' remedy, if any, on account of defendants' misrepresentation as to the price paid or the quantity of the land, is at law, and money paid to the defendants to carry out the agreement does not make them trustees.

Bill for account &c.   On final hearing on pleadings and proofs.

*Mr. William Brinkerhoff*, for complainants.

*Mr. Robert Gilchrist*, for defendants.

THE CHANCELLOR.

The bill states that Delos E. Culver and Isaac B. Culver (now deceased), together with the complainants, or those under whom they claim, and some of the defendants, purchased, in or about 1867, for purposes of joint speculation, in certain specified shares, certain land in the county of Hudson, mentioned in the bill, and which was subsequently called West Bergen; that the title was taken by the Culvers in trust for all the owners; that the Culvers represented the cost of the property to be $1,500 an acre, and that there were seventy-three and six hundred and fifty-two one-thousandths acres; that the payment was made through the Culvers for the property accordingly, at that price, and upon such representation of its contents; that the complainants subsequently discovered that there were only sixty-eight and three hundred and forty-seven one-thousandths acres, or thereabouts, in the property, and that the price paid by the Culvers for it, instead of being $1,500 an acre, was much less.

The bill sets out an agreement, dated May 16th, 1867, between the owners, in which it is recited that the lands were conveyed to the Culvers for the benefit of themselves and the other parties to the agreement, and were purchased with the understanding and agreement that they should be improved by the owners at common expense; and it also sets out a memorandum, purporting to be dated November 1st, 1866, and certified to as a correct statement of the transaction by Delos E. Culver, in the name of himself and Isaac B. Culver, under date of the 14th January, 1867, in which it is stated that the purchase was of seventy-three

and six hundred and fifty-two one-thousandths acres of land, at the price of $1,500 per acre, and that the part purchased from Wakeman and White contained thirty-five and thirty-three one-thousandths acres, and the other part, purchased from Vreeland, contained thirty-eight and six hundred and nineteen one-thousandths acres. It states that Delos E. Culver has been adjudged a bankrupt, under the bankrupt laws of the United States.

After having answered, Isaac B. Culver died, and his administratrix was made a party to the bill. The bill prays for a discovery and an account, and seeks to recover the money which was paid to the Culvers, as the price of the property, in excess of the amount actually paid by them; the complainants alleging, as before stated, that the Culvers misrepresented both the price paid and the contents of the property.

All the defendants have answered the bill. The answers allege that the property in question was purchased by the Culvers prior to the making of the agreement of May 16th, 1867, and prior to October, 1866; that in October, 1866, the complainants, or those under whom they claim, obtained their interests in the property by an agreement then made with the Culvers, by which it was recited that the Culvers had agreed to purchase the lands in question, with a view to improving them in the manner specified in the agreement; that they proposed to sell certain undivided portions of the property for the purpose of forming an association to make the improvements, and to bring the land more rapidly into use, and that it was thereby agreed that, in case the purchase should be consummated to the extent of about seventy-five acres, more or less, by the Culvers, those who signed the agreement would join them in the ownership of the land, in the proportions specified by figures set opposite to their signatures, for the purpose before mentioned, and would pay the Culvers $1,500 an acre for the land; that it was also thereby agreed, among other things, that the charges for grading &c. should, by agreement, be made a

lien in the nature of a mortgage, as was done in the case of an association (called the Lafayette Association) of the owners of land in a place called Lafayette, in that vicinity, and that the agreement further stated that the lands embraced therein were those owned by White and Wakeman and Abram Vreeland, which Garret Van Horn had an option to buy, and of which Delos E. Culver had the refusal from him; that, in drawing the agreement of May, 1867, which was made in order to charge the lands with the cost of the improvements, the agreement of the Lafayette Association was used, and from that agreement, by inadvertence, the statement contained in the agreement of May, 1867, that the lands were purchased for the benefit of the parties to the agreement, crept into that agreement; that, in fact, the price paid by the Culvers for part of the land, about half (the White and Wakeman tract), was $1,500 per acre, and as to the rest it was $1,440, or thereabouts, per acre; that although the deeds to the Culvers for the property conveyed only about sixty-eight acres, while payment was made for about seventy-three acres, the difference is accounted for by the fact that in connection with the White and Wakeman tract, the right to dock out to low-water mark was obtained, and that it had been agreed that the Newark and New York Railroad Company, whose road was then in course of construction, would fill up that land under water with earth from its cuttings, in consideration of a grant of the use of several acres of the associates' land for their tracks. The answer insists that the complainants have a remedy at law, and sets up the statute of limitations as a bar to any recovery.

It appears very clearly, from the testimony, that not only at the time when they gave their testimony, but also at the time when the bill was filed, those of the complainants who were sworn as witnesses had entirely forgotten the fact of the existence of the agreement of October, 1866. All of them denied the existence of it or any such agreement. But when it was presented to them, they all

Rice v. Culver.

acknowledged their signatures to it and the genuineness of
the instrument, while, at the same time, they denied any
recollection of it, and they also denied that it contained the
true agreement between the parties.  But there is no proof
of fraud in the execution of that instrument.  It not only
is not attacked in the bill, but it is not even referred to.  It
must be presumed to contain the real contract of the parties
to it, and they, under the circumstances, are bound by its
recitals.  It expressly and distinctly states that the Culvers
had agreed to purchase the land, but mentioned no price;
and that the Culvers proposed to sell certain undivided por-
tions of the land for the purpose of forming an association;
and that the subscribers agreed that, in case the purchase
should be consummated by the Culvers to the extent of
about seventy-five acres, more or less, they would join the
Culvers in the ownership of the land, and pay the latter
$1,500 an acre for the property.  It is not claimed that the
relations of the parties were changed by any subsequent
agreement; nor are the recitals, in respect to the purchase
and ownership of the property in the agreement of May
16th, 1867, really inconsistent with the agreement of Octo-
ber, 1866.

It appears by the evidence that the Culvers paid for the
White and Wakeman tract $1,500 an acre, and that, although
they obtained a deduction, by way of discount, from the
price, it was not very considerable, and was merely a deduc-
tion for anticipatory payment.  And, as to the other tract
(the Vreeland tract), according to the testimony, they
appear to have paid $1,440 an acre, or thereabouts, for it.
But, under the circumstances of the case, the price which
they paid is a matter of indifference.  No reference is made
in the agreement of October, 1866, by which the complain-
ants obtained their interest in the property, to the price to
be paid for the land by the Culvers; but, as before stated,
the subscribers expressly agree thereby to pay to the Cul-
vers the price of $1,500 an acre for the land.

But, again, it appears that, as early as 1868, five years before the bill was filed, Mr. Chaddock, one of the principal witnesses for the complainants, became aware of the price which was paid by the Culvers for the property, at least so far as that part which was purchased from White and Wakeman was concerned; and it appears, also, from his testimony, by fair inference, that the other complainants, or those under whom they claim, were, also, at that time, not only apprised of the price paid by the Culvers, but of the deficiency in the number of acres, mentioned in the bill.

Mr. Chaddock testifies that he had "five or six friendly talks" with Isaac B. Culver in regard to both matters; that Culver denied that there was any deficiency in the contents; that Culver alluded to Mr. Pollock, one of the subscribers, as threatening to bring suit, and he says that Culver made no objection to it, and that he (Chaddock) construed what he said into a sort of defiance. On the subject of the delay in taking legal action, in respect to the price and deficiency of contents, he says he took legal advice in 1868, and asked his counsel whether the taking of the deed, which he then took for part of the property in the division among the owners, would bar him from any claim in respect to any deficiency which might be made to appear, and that he was advised by his counsel that it would not. He also says that that was not all the reason why legal proceedings were not instituted, but that there were a variety of reasons, and that one was that no one felt like attending to the matter, or "working it up," as he terms it, or taking the necessary trouble; and, he adds, that there was no concert of action until Mrs. Dimon brought the matter up, referring, it is presumed, to the bringing of this suit.

In reference to the memorandum set out in the bill, and which was given, as the complainants allege, by Delos E. Culver, in the name of himself and Isaac B. Culver, to Mr. Dimon, who was one of the owners, and which, it is alleged, is evidence that the property was purchased by the Culvers,

in trust for themselves and the subscribers and the other owners mentioned in the agreement of May, 1867, or those under whom they claim, it may be said that it appears that the body of the memorandum was drawn up by Mr. Dimon and was presented to Delos E. Culver, with the request that he would fill in the amounts, and they were filled in by the latter accordingly. The contents of the Vreeland tract are misstated in it; they are said to be a fraction over thirty-eight acres. But that is a matter of no importance. The amounts which the association paid for the tracts, in the purchase from the Culvers, are correctly stated. The memorandum is not in contrariety to, but in conformity with, the agreement of October, 1866.

The explanation in the answer and in the testimony of Delos E. Culver, in regard to the addition of about five acres to the contents of the tracts, according to the conveyances to the Culvers, is not satisfactory. This may be due to the distance of time from the transaction at which the explanations are made. It is alleged, in the answers, that the amount added, which is stated with exactness at five and three hundred and sixteen one-thousandths acres, was understood and agreed to at the time by all the parties in interest; that it was made in view of the fact that White and Wakeman had received from the state, in 1860, a grant of the land under water in front of the tracts, or one of them, conveyed by them to the Culvers, and the latter, being entitled thereto under their deed, claimed that some part of the land under water should be reckoned at the rate at which the purchase was made by the associates from them; and that that part was fixed upon as five and three hundred and sixteen one-thousandths acres, taking into calculation only a part of the land between high and low-water marks.

It appears that, by an act of the legislature (*P. L. 1860 p. 229*), William White, Edgar B. Wakeman and Samuel Westcott were, in 1860, authorized to erect and maintain all such walls, piers and bulk-heads in front of their land on the Hackensack river or Newark bay, in the township of

Bergen, in the county of Hudson, as might be necessary for the improvement of their property, or the benefit of commerce, and to collect wharfage for the use thereof, and to hold and enjoy the same to themselves, their heirs and assigns; provided that no such pier or bulk-head should be erected in front of the land of any other person, and that the piers or bulk-heads should be so constructed as not to interfere with or obstruct the navigation of the river or bay. It might well be that this right was regarded as of great value in connection with the land lying between high and low-water marks in front of the White and Wakeman tract, and that the probability (for such there seems to have been) that it might be filled up and reclaimed, almost without expense, by waste earth from the cuttings of the railroad then in course of construction, was regarded by the persons interested in the speculation as equivalent to a grant of the land, and that they were at that time willing to pay for it accordingly, and that the price of $1,500 an acre for the five acres and a fraction, which, it is said, were conceded to be added by reason of the grant by the legislature to White and Wakeman, was regarded as just compensation for it accordingly.

It must be remembered that the transactions under consideration took place at a period when speculation in real estate was at its height, and prices were often obtained for land which, judging from subsequent experience, were very far in excess of its true value; and it should not be forgotten, in this connection, that the bill in this case was not filed until after the great depreciation in the real estate market was well advanced. These considerations are appropriate to any estimate to be put upon the testimony offered in connection with the allowance of the price of $1,500 an acre for the land under water in front of the White and Wakeman tract which was not conveyed by their deed, but which, it was believed, would readily and without expense be reclaimed and be made available to the owners of that property.

That the Newark and New York Railroad Company had agreed with the Culvers to furnish enough earth, from the excavation which they were making, to fill the land under water to that extent or more, in consideration of which agreement the railroad company was to have the use of several acres of the land of the associates for their tracks, is testified to, and no attempt made to contradict it. Certain it is that the existence of this deficiency must have been known to the subscribers to the agreement of October, 1866, from the beginning. It appears, by a map annexed to that agreement, that the White and Wakeman tract, and the Vreeland tract, each contained about thirty-five acres, being seventy acres in the whole, and as early as about 1867, it appears from the testimony, that the subscribers were aware of the fact of the existence of the deficiency, and some of them spoke to Isaac B. Culver on the subject.

Delos E. Culver testifies that it was as late as 1873 or 1874 when he first heard of any allegation that there was any deficiency in the quantity of the land. By a letter of his, dated May 11th, 1874, written to the complainants' solicitor, he expressed his willingness to enter into a written stipulation with such of that gentleman's clients as had not settled the matter theretofore, to employ two surveyors, who should take the deeds and measure the land, and ascertain the deficiency, if any, and professed his willingness to pay for one-half of it at the rate of $1,500 per acre; and he added that his brother, Isaac B. Culver, had told him that he might make the same offer for him. Isaac died on or about the 21st of October, 1875.

The reasons which are given for the failure to insist upon satisfaction for the deficiency, and taking legal proceedings in the premises, are not such as to relieve the complainants from the consequences of undue delay in the prosecution of their claim. It does not appear that Isaac B. Culver ever recognized the claim at all, but, on the other hand, according to the testimony of Mr. Chaddock, he denied that there

was any deficiency, and refused to recognize any liability on that head, expressing his determination to defend himself in any legal proceedings which might be brought by Mr. Pollock on that ground. At least six years elapsed between the time when the money was paid to the Culvers for the price of the land, and the time of bringing this suit. Delos E. Culver swears, as before stated, that he never heard of any such claim until 1873 or 1874. He was adjudicated a bankrupt on the 23d of September, 1873.

When it is considered that this claim was a mere money demand against the Culvers, in respect of the money paid for the price of land sold by the acre, but deficient in quantity, it is obvious that the remedy of the complainants was at law. They insist, indeed, and such is the frame of the bill, that the money paid by the complainants to the Culvers was paid in trust, to be devoted to the purpose of paying the purchase-money of the land, and the bill is filed against the Culvers as trustees, but it is obvious that, in the agreement of October, 1866, the relations of trustees and *cestuis que trust* did not exist between the Culvers and the complainants, but the subscribers to that agreement were the purchasers of an interest in the property from the Culvers at a fixed price ($1,500 an acre), and if the latter, in selling the property by the acre, received from the subscribers to the agreement, by misrepresentation of the contents of the land, money which they ought or would not otherwise have received, an action at law was the appropriate remedy for the injury, and the money might have been recovered accordingly.

The bill, though it alleges that Delos E. Culver has been adjudicated a bankrupt, does not allege that he has acknowledged his liability since such adjudication. The claim must, in the best light in which it can be viewed, under the circumstances, be rejected by this court as a stale demand. It should be stated, in this connection, that Isaac B. Culver died, as has been before shown, before any testimony was

taken in this cause. The testimony of the complainants, therefore, became, by his death, incompetent as against his estate. *Lanning* v. *Lanning*, *2 C. E. Gr. 228.*

The bill will be dismissed, with costs.